UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW POST, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No.  4:21-cv-01113-SRC |
| | ) | |
| SHER & SHABSIN, P.C., | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>Memorandum and Order</u>**

Andrew Post borrowed $1,500 from each of three loan companies in May 2018.  Later that year, the law firm Sher & Shabsin sued Post in state court on behalf of two of the companies, attempting to collect their loans.  About a year later, Sher & Shabsin sued Post again, this time on behalf of the third company, AAA Checkmate.  After the state court entered a default judgment in favor of AAA Checkmate, Post brought this suit against Sher & Shabsin, claiming that it violated federal debt-collection laws when it sued Post on behalf of AAA Checkmate.  Pointing to an arbitration clause in the loan agreement Post signed with AAA Checkmate, Sher & Shabsin argues the Court should compel arbitration and either dismiss or stay the case.

**I.      Background**

Plaintiff Andrew Post is a Missouri resident.  Doc. 1-1 at ¶ 1.  AAA Checkmate, an Illinois-based financial services provider, loans money to consumers, including from its St. Louis location.  *Id.* at ¶; Doc. 12-2 at ¶¶ 2–3.  To obtain a AAA Checkmate loan, customers must submit a loan application and enter into a loan agreement.  Doc. 12-2 at ¶ 7.  Post applied for such a loan in May 2018 and signed a loan agreement with AAA Checkmate.  Doc. 1-1 at ¶ 6;

Doc. 12-2 at ¶¶ 8–10, pp. 5–7; Doc. 15 at p. 2.  The loan agreement includes an arbitration provision, which states in relevant part:

> **You and we agree to arbitrate according to the following terms:** . . . "Claim" means any dispute, claim or controversy between you and us, or our attorneys and agents (including those raised as an initial claim, counterclaim, cross claim, or third-party claim) that arises as a result of or has anything to [sic] at all to do with (1) your loan account, (2) this Agreement, (3) any prior loan or agreement you have had with us or (4) your relationship with us including our attempts or the attempts of our attorneys or agents to collect your obligation. This term includes (a) disputes about whether this Arbitration Provision is valid or binding or about whether or when it applies, (b) disputes relating to constitutional provisions, statutes, ordinances, regulations, court decisions, compliance with this Agreement, (c) disputes relating to wrongful acts of every type (whether intentional, fraudulent, reckless, or just negligent) and (d) any claim or request for injunctive or declaratory relief. The term "claim" does not mean an action brought in small claims court . . . .
>
> **Starting an Arbitration.** If at any time, you or we give written notice to the other of an intention to begin arbitration of a Claim or Claims or to require arbitration of the other party's Claim or Claims then said claim or claims shall be arbitrated, even if such claim or claims have already become a subject of a lawsuit. All doubts about whether to arbitrate a Claim shall be resolved in favor of arbitration if arbitration is requested by either you or us. . . .
>
> **Application of Federal Arbitration Act.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statues of limitations. This Arbitration Provision shall survive any default as well as the repayment of all amounts borrowed from us, any legal proceeding by us to collect a debt owed by you, and any bankruptcy, to the extent consistent with applicable bankruptcy law. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement.

Doc. 1-1 at pp. 9–10; Doc. 12 at pp. 2–4; Doc. 12-2 at p. 7.  Post signed his initials below the arbitration clause.  Doc. 12 at p. 4; Doc 12-2 at ¶ 10.  When Post's loan balance with AAA Checkmate was past due, AAA Checkmate hired the law firm Sher & Shabsin to collect on the loan.  Doc. 12-1 at ¶ 6; Doc. 15 at p. 2.  After sending a demand letter and making multiple attempts to reach a settlement with Post, Sher & Shabsin filed a lawsuit

2

against Post in state court to collect the unpaid balance on the loan. Doc. 1-1 at ¶ 16; Doc. 12-1 at ¶¶ 7–10; Doc. 15 at p. 2. The court entered default judgment in favor of AAA Checkmate. Doc. 12-1 at pp. 2-3.

Post then filed this suit against Sher & Shabsin in state court, alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d–f. Doc. 1-1. Invoking federal question jurisdiction, Sher & Shabsin removed the case, Doc. 1, then moved to compel arbitration, Doc. 11. The parties have fully briefed the matter and filed exhibits containing the contracts and related documents at issue in the case.

## II.     Standard

"Arbitration agreements are governed by the Federal Arbitration Act . . . ." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). That Act mandates broad enforcement of arbitration provisions:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The Federal Arbitration Act, or FAA, reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). Accordingly, "courts must place arbitration agreements on an equal footing with other

3

contracts . . . and enforce them according to their terms." *Id.* (citations omitted).  However, "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)).  "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (alteration in original) (quoting *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

Before compelling arbitration, a district court must determine: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783–84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)).  The Court, rather than the arbitrator, decides these substantive questions of arbitrability unless the parties "clear[ly] and unmistakabl[y]" delegated that issue to the arbitrator.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted).  In contrast, "arbitrators should decide whether the procedural prerequisites for arbitration ha[ve] been met." *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Const. Prod.*, 359 F.3d 954, 956 (8th Cir. 2004) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85–86 (2002)).  These procedural arbitrability issues include waiver, delay, and like defenses to arbitrability.  *Howsam*, 537 U.S. at 84.  Because "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement; an arbitration agreement may be "invalidated by generally applicable contract defenses." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations omitted).  "If a valid and enforceable arbitration agreement

4

exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* (citing *Faber*, 367 F.3d at 1052).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014). Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in their favor. *Id.* at 743. The Court may not compel arbitration where any genuine issue of material fact remains as to whether a valid arbitration agreement exists. *See id.* at 744. However, "[t]he party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for trial." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007) (citation omitted). And "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Id.* (citation omitted). Further, "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010) (citing *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006)). "All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 4.01(E).

**III.   Discussion**

Sher & Shabsin argues that the loan agreement between Post and AAA Checkmate "contains an enforceable and binding arbitration provision" and delegates threshold questions of arbitrability to an arbitrator. *Id.* at pp. 1, 7–8. Post acknowledges that the agreement includes an enforceable and binding arbitration provision but argues that because Post sued Sher & Shabsin

5

for allegedly violating the FDCPA, any arbitration agreement is irrelevant.  Doc. 15 at p. 1.  The Court agrees with Sher & Shabsin.

> A.  **Because Post entered into a contract evidencing a transaction involving interstate commerce, the FAA applies to the contract's arbitration provision.**

Before ordering arbitration based on a delegation clause, which delegates to the arbitrator the job of deciding whether the parties' dispute is subject to arbitration, the Court must first decide whether "the clause appears in a 'written provision in . . . a contract evidencing a transaction involving commerce' consistent with § 2 [of the FAA]."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (noting that the contract must also avoid triggering the "contracts of employment" exception in § 1 of the FAA).  Section 1 of the FAA defines "commerce" as "commerce among the several States . . . ."  The Supreme Court has interpreted § 2 of the FAA to "insist[] that the 'transaction' in fact 'involve' interstate commerce . . . ."  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281 (1995).  "'[I]nvolving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full."  *Id.* at 277.

The Court agrees with Sher & Shabsin that "the FAA governs the Arbitration Provision" because "Post's transaction with AAA Checkmate indisputably involved interstate commerce."  Doc. 12 at p. 7.  Post does not dispute that the transaction at hand involved interstate commerce.  Doc. 15.  The parties agree that Post, a Missouri resident, entered into a loan agreement in Missouri with AAA Checkmate, an Illinois corporation.  Doc. 1-1 at pp. 4–5; Doc. 12 at p. 2; Doc. 13 at pp. 1–3; Doc. 15 at pp. 1–2.  The parties do not argue—and nothing in the record indicates—that the loan agreement triggers § 1's exception for "contracts of employment."  The arbitration provision itself states that it "is made pursuant to a transaction involving interstate commerce, and shall be governed by the [FAA]."  Doc. 12 at p. 4; Doc. 12-2 at p. 7; Doc. 13 at p. 2.  Thus, the FAA applies.

**B.     The arbitration agreement contains a delegation clause clearly and unmistakably leaving the question of arbitrability to an arbitrator.**

Arbitration agreements may contain a delegation clause, which is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69.  Further, "[a] delegation clause is merely a specialized type of arbitration agreement, and the [FAA] 'operates on this additional arbitration agreement just as it does on any other.'" *New Prime Inc.*, 139 S. Ct. at 538.  And "[a] delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *Id.*  "Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration." *Id.*

The arbitration provision here contains a delegation clause, which states that arbitrable claims include "disputes about whether this Arbitration Provision is valid or binding or about whether or when it applies."  Doc. 12 at pp. 3, 8; Doc. 12-2 at p. 7.  Post does not challenge the validity of the entire contract, the arbitration provision, or the delegation clause.  Post also does not dispute that Sher & Shabsin acted on behalf of, and as an agent for, AAA Checkmate, or that the law firm can enforce the arbitration provision as to him.  Doc. 1-1 at pp. 4–5; Doc. 15.

The Court finds that this dispute centers on whether the arbitration provision applies to Post's FDCPA claims, which is precisely the type of question the parties delegated to an arbitrator.

7

**IV.     Conclusion**

The Court finds that no genuine issue of material fact exists as to whether the FAA applies to the parties' contract. And the Court finds that the parties' dispute over whether the arbitration provision applies to Post's FDCPA claims is a question of arbitrability that the parties delegated to an arbitrator. The Court therefore grants Sher & Shabsin's [11] Motion to Compel Arbitration and stays this matter pending arbitration. The parties must provide a joint status report regarding the progress of arbitration proceedings no later than February 22, 2022, and must also submit a notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.

The Court directs the Clerk of Court to administratively close this matter. The parties must continue to comply with all orders of the Court, provide status updates to the Court, and notify the Court of any development that may affect the stay of this matter.

So Ordered this 23rd day of December 2021.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE